[Civ. No. 22865.   Second Dist., Div. Two.   July 21, 1958.]

DAVID FRY, Appellant, v. GEORGE ELKINS COMPANY
(a Corporation) et al., Respondents.

Leslie & Bernson for Appellant.

Robert J. Kelleher for Respondents.

FOX, P. J.—Plaintiff brought this action to recover a deposit of $4,250 that he made in connection with his contemplated purchase of a home from defendants Miller. The court, however, awarded him a judgment for only $937.50. Plaintiff has appealed.

On May 20, 1956, plaintiff made an offer in writing, through defendant George Elkins Company, real estate broker, to purchase the Miller home for $42,500. Plaintiff put up his check for $4,250. The offer contained this provision: "This offer is further conditioned upon the buyer obtaining $20,-000.00 loan at 5% for 20 years." The buyer was advised at that time that there was a 5 per cent loan on the property on which there was a balance of $16,650; that this loan was held by Western Mortgage Company; that arrangements could likely be made to refinance the loan in line with the buyer's desire but that a loan upon the required terms could not be obtained from a bank. The owners immediately accepted Fry's offer and agreed in writing to pay the broker a 5 per cent commission, or one half of the deposit in the event the same was forfeited by the purchaser. A 30-day escrow was opened the next day. It recited the loan above mentioned and then provided: "The completion of this escrow is subject to buyer being able to refinance said loan to $20,000.00 at 5% per annum, maturing over a period of 20 years."

The buyer did not contact Western Mortgage either personally or by telephone relative to refinancing the loan. At the instance, however, of a representative of the Elkins organization, Mr. Reed, on behalf of Western Mortgage, mailed a loan application on May 28th to Fry, together with a letter stating that his company would consider a $20,000 loan at 5 per cent over a 15-year period. Reed contacted Fry twice regarding this loan by telephone but at no time did the latter ask whether Western Mortgage would make the loan for a 20-year term. He did, however, complain about the 2 per cent prepayment provision in the loan application in the event of payment within the first three years. On June 11th, Reed, having been told by the broker's representative, that a 20-year loan was essential to a sale, sent Fry another letter stating that Western would consider making the loan for that term. During the early part of June Mrs. Lynch, of

the Elkins organization, with whom Fry had had his initial dealings for the purchase of the house, assured him there was a $20,000 loan at 5 per cent for 20 years waiting for him at Western Mortgage and advised him to get down as quickly as he could and sign the papers. Fry was also told about the same time by both Mr. and Mrs. Miller that the required loan on the stated terms was available at Western Mortgage if he would just file the application papers. Fry, however, failed to file any application therefor. Reed's testimony indicates that if such application had been made by Fry the loan would have been made. It was approximately at this time that Fry told Mrs. Lynch, according to her testimony, that he had lost all interest in the house; that he had changed his plans; and that he was going to Hawaii as he had planned originally. Fry had in the meantime applied to two banks where he was known for the desired loan. Both banks, however, had rejected his application. Fry thereupon wrote the Millers attempting to rescind the deal because of his inability to obtain the loan on which the transaction was conditioned.

A couple of days after the expiration of the Fry escrow the Millers entered into another escrow with the Rothchilds for the sale of their home for $40,375 without a broker's commission. But in order to make the sale the Millers had to include certain items of personal property valued at $937.50. The transaction was concluded on June 27. Western Mortgage made a loan to the new purchasers on the property for $20,000 at 5 per cent for 20 years. Mr. Rothchild had requested Western Mortgage by telephone on June 14th to send him an application for a loan on this property. In order to get the escrow closed quickly (it was closed in five days) the Millers employed an attorney to handle the deal and paid him $250 for his services. A brokerage commission of $2,125 on the Fry transaction was retained by Elkins. The trial court deducted the total of these last three items ($3,312.50) from plaintiff's deposit of $4,250 and rendered judgment for plaintiff for the difference, viz., for $937.50. Being dissatisfied with the amount of this award plaintiff has appealed.

In seeking a reversal plaintiff argues that the evidence is insufficient to support certain findings and that the findings do not support the judgment.

■ Where a finding of fact is attacked on the ground that there is insufficient evidence to sustain it, the power of an appellate court begins and ends with the determination as to

whether there is any substantial evidence, contradicted or un-contradicted, which will support the challenged finding.

When different inferences reasonably can be drawn from the evidence, a reviewing court is without power to substitute its deductions for those of the trial court. (*Primm* v. *Primm*, 46 Cal.2d 690, 693-694 [299 P.2d 231].)

Plaintiff first challenges the finding to the effect that he did not in good faith attempt to refinance the encumbrance on the property by obtaining a $20,000, 5 per cent, 20-year loan. He bases his argument primarily on the fact that his application for such a loan was rejected by two banks. It is a matter of common knowledge that the lending policies of different classes of financial institutions vary greatly. This is particularly true with respect to the period for which a loan may be made. The fact that a bank is unwilling to make 20-year loans on residential property in a particular locality does not necessarily justify an inference that other lending institutions will not make such a loan. At the initial stage of this transaction plaintiff was advised of the unlikelihood of obtaining the requisite loan from a bank but that it probably could be obtained from Western Mortgage, which already had a substantial loan on the property. Notwithstanding this advice, plaintiff contented himself with making applications only at the banks and made no application or inquiry of Western Mortgage for such a loan and declined to contact that institution when told that the required loan was available upon his signing the application and other necessary papers. Furthermore, there was evidence that plaintiff had changed his plans and was no longer interested in buying the property. From the foregoing evidence the trial court reasonably could infer that plaintiff did not in good faith try to refinance the loan in question.

Plaintiff seeks to justify his position on the ground that the loan application from Western Mortgage contained a two per cent prepayment privilege in the event the loan was paid during the first three years. The simple answer to this argument is that no such restriction was placed on the conditions of the loan by the plaintiff either in the deposit receipt or in the escrow agreement. He was therefore not entitled to reject the loan because of the inclusion of such a prepayment privilege.

Plaintiff's next contention is that the evidence is not sufficient to support the finding that he refused to perform all the obligations on his part to be performed under the

agreement and thereby was guilty of a breach of the agreement. Implicit in the refinancing of the loan in question was the obligation of the plaintiff to put forth a good faith effort to obtain such refinancing on the terms he had specified. The court found, on substantial evidence as we have pointed out, that plaintiff did not in good faith carry out that obligation, which was essential to the consummation of the deal. This was obviously a breach of the agreement between the parties.

Plaintiff makes the unmeritorious contention that the evidence is insufficient to sustain the finding that the parties did not mutually rescind the agreement. Plaintiff is contending, in effect, that the evidence required a finding of mutual rescission as a matter of law. He bases this argument on the fact that he had offered to rescind and on the testimony that Rothschild requested Western Mortgage on June 14th to send him an application for a loan on the property, indicating that he contemplated purchasing it, and the fact that the Millers opened an escrow with the Rothschilds for the purchase of the property two days after the expiration of the instant escrow and Western Mortgage made the loan (for $20,000 at 5% for 20 years) three days after the new escrow was opened. The record does not show that the Millers did not keep themselves in a position to close the deal with plaintiff until the close of the escrow period. The Millers and their broker were insisting that plaintiff sign the loan application at Western Mortgage and go through with the purchase. Plaintiff was told by Mrs. Lynch of the Elkins Company that if he refused to go through with the purchase he would likely be sued. It is significant that the new escrow was not entered into and the loan to the Rothschilds was not made until after the expiration of the Fry escrow. The evidence and the reasonable inferences therefrom adequately support the challenged finding.

Plaintiff argues that the Millers were not obligated to pay the Elkins Company, as brokers, a commission of $2,125. By the terms of the deposit agreement the Millers promised to pay the broker a commission of 5 per cent or one half of the deposit ($2,125) in the event the same was forfeited by the purchaser, provided the same did not exceed the full amount of the commission. The deposit was $4,250, one half thereof ($2,125) was equal to 5 per cent of the purchase price. It is clear from the record that the Millers were at all times ready, able and willing to convey the property on the agreed terms. It is also clear that the deal fell through

because plaintiff was at fault. Under these circumstances the Millers became obligated to the broker for the agreed commission of $2,125.

There is no merit in plaintiff's final contention that the findings do not support the judgment. The findings make it unmistakably clear that the failure of the proposed sale to come to fruition was due to plaintiff's acts and attitude. The court gave plaintiff a judgment for the difference between his deposit and the total of the specific items of damages shown by the evidence to have been sustained by the Millers as a result of plaintiff's breach.* This is in accordance with the principles stated in *Freedman* v. *Rector, etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1].

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

---

*Plaintiff does not question the propriety of the allowance ($250) for handling the Rothschild escrow.