Steven C. MYERS, et al.

v.

Douglas KAYHOE, et al.

No. 35, Sept. Term, 2005.

Court of Appeals of Maryland.

Feb. 9, 2006.

Michael G. Rust (Griswold & Lee, P.A., on brief), Easton, for petitioners,cross/respondents.

William M. Ferris (Lynn T. Krause, Krause & Ferris, on brief), Annapolis, for respondents/cross-petitioners.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

In this case, we must decide three issues arising out of a contract for sale of real estate. Appellants ask us to reverse

the trial court's refusal, after granting summary judgment to appellants in their action to recover their deposit, to award attorney's fees under a provision in a sale contract providing for the award of attorney's fees to the prevailing party in a dispute under the contract. Appellees, in their cross-appeal, ask us to reverse the trial court's grant of summary judgment, arguing that there were remaining disputes of material fact as to whether a financing commitment contingency clause in the contract was satisfied or waived. We shall hold that trial court's grant of summary judgment to appellants was proper, but that the court failed to apply the appropriate construction of the contract provisions governing the award of attorney's fees to appellants' request for fees. Accordingly, we shall remand the case to the trial court for reconsideration of appellants' claim for attorney's fees.

I.

On April 12, 2002, appellants, Steven Myers and Linda Barrett, contracted with appellees, Douglas Kayhoe and Ruth Ann Kayhoe, to purchase residential real property located at 351 Kehm Road, Queenstown, MD.[1] Paragraph 19 of the agreement further provided that it was contingent upon appellants obtaining financing in the form of a 30 year loan for $245,000 at 7% interest, and the subsequent paragraph contained the following provision relating to this financing:

"20. **FINANCING APPLICATION AND COMMIT-MENT:** Buyer agrees to make written application for the financing herein described within five (5) days from the date of Contract Acceptance. If such written financing commitment is not obtained by Buyer within thirty (30) days from the date of Contract Acceptance, this Contract of Sale shall be null and void and of no further legal effect, and all deposits hereunder shall be disbursed in accordance with the terms of this Contract."

---

1. The purchase agreement was a standard-form Maryland Association of Realtors Contract of Sale with addenda.

The next paragraph specified conditions under which the requirements of ¶¶ 19 and 20 could be satisfied by alternate financing, and provided that "[n]othing in this paragraph shall relieve Buyer of the obligation to apply for and diligently pursue the financing described in the 'Financing' Paragraphs 19 and 20." The purchase agreement further provided that a prevailing party in litigation under the agreement between buyer and seller "shall be entitled to receive reasonable attorney's fees from the other party as determined by the court or arbitrator." Appellants paid a $2,000 deposit under the agreement, and the agreement provided for a closing date of June 21, 2002. The agreement expressly provided that time was not of the essence.

The purchase agreement also contained an addendum provision stating that the agreement was contingent upon executing a sale agreement for the purchase of appellants' then current home and a successful closing on appellants' home before the closing date under the agreement. At the time of the purchase agreement, appellants' home was under contract for sale. Presumably for this reason, the sale addendum originally did not specify a date by which appellants needed to have their home under contract to satisfy the contingency. The prospective purchasers of appellants' home decided they did not want to go through with the sale, and appellants agreed to a release. On May 4, 2002, appellants and appellees executed a new addendum to the original purchase agreement, revising the sale contingency clause to specify that the contract was contingent upon appellants entering into a sale contract for their home by May 24, 2002. This addendum provided that time was of the essence with respect to the contract date.[2] Appellants did not enter into a sale agreement until after May 24, 2002.

On June 6, 2002, after appellants had entered into a sales contract for their home, appellants and appellees executed a

---

2. The May 24, 2002, date was specified in paragraph one of the addendum, and the last sentence of paragraph one states that "[t]ime is of the essence of this paragraph."

second new addendum to the purchase agreement. It provided as follows:

> "All parties agree and understand that the contract of sale dated 4/12/02 will hereby be re-enacted with revisions and all other terms and conditions will remain in full force. Buyers have revised purchase price and the contract reflects the contingency of a successful settlement of their home."

Appellants then applied for financing on the terms specified in the purchase agreement with NovaStar Financial. They had discussed financing previously with NovaStar, but NovaStar informed them that it could not consider an application until it had a purchase contract. On June 6, appellants faxed a request to NovaStar for an application form. They received the application on June 12, and completed and faxed it to NovaStar later on the 12th of June. NovaStar declined appellants' application after a review of the original appraisal of the property revealed that its value had been overstated in the original appraisal. NovaStar sent an email to appellants informing them of its decision to decline their application on June 24, 2002.

Darlene Weingartner, appellants' real estate agent, gave the following testimony at her deposition:

> "Q: Did you ever discuss with Mr. Myers or Ms. Barrett their attempts to obtain a mortgage for the revised contract—revived contract of June 6th?
>
> A: I discussed it with them when we did the revision to the contract. I asked them how—what's going on with your loan and they said, 'We're good to go. The loan's in place.' "

In their summary judgment motion, appellees claimed that "[a]t the time of this second addendum, [appellees] had been advised by Ms. Weingartner that the financing was in place." [3]

---

**3.** Appellees, however, did not cite to anything in the record supporting this assertion in their summary judgment motion or in their brief before this Court. The portion of Weingartner's deposition testimony offered in support of appellees' summary judgment motion does not reflect that Weingartner related appellants' comment to appellees.

Appellants *did not obtain* alternate financing. After the appraisal was rejected and appellants' initial application denied, NovaStar offered to lend them $225,000.00. Appellees' real estate agent, Karen Kilheffer, also offered to arrange financing for the appellees on the terms called for in the purchase agreement through her brokerage firm after appellee's initial application was denied. Appellants did not accept either of these offers, and the transaction did not close. Appellees later sold the home to another buyer for less than the price in the agreement with appellants.

In March 2004, appellees sued appellants in the Circuit Court for Queen Anne's County, claiming they had breached the purchase contract. Appellants counterclaimed for return of their security deposit, as well as attorney's fees. On cross-motions for summary judgment, the Circuit Court granted summary judgment for appellants on the issue of the security deposit, but awarded no attorney's fees, basing this decision on its finding that "there was a second contract between the parties" that arose as a result of the June 6, 2002 addendum. Appellants and appellees both filed motions for reconsideration, which were both denied.

Appellants noted a timely appeal to the Court of Special Appeals, and appellees noted a cross-appeal. We granted certiorari on our own initiative before decision in the Court of Special Appeals. 388 Md. 97, 879 A.2d 42 (2005).

## II.

Appellants argue before this Court that the plain language of the attorney's fees provision in the purchase agreement that "the prevailing party . . . shall be entitled to receive reasonable attorney's fees from the other party as determined by the court" required the court to determine what amount of the attorney's fees actually incurred by the appellants were reasonable given the nature of the services rendered, and to enter a judgment for the appellants in such an amount. They claim that the trial court's refusal to award any attorney's fees was not supported by its conclusion that the June 6, 2002 adden-

dum created a new contract rather than a modification of the original sale contract, because the addendum expressly provided that "all other terms and conditions" of the new contract would "remain in full force," including the attorney's fees provision.

Appellees reply that the decision of the trial court on the issue of attorney's fees is supported by the language in the attorney's fees provision providing that the amount of fees is to be "determined by the court or the arbitrator." They contend that this language vested the trial court with unfettered discretion to determine what amount of attorney's fees would be reasonable.

Appellees argue in their cross-appeal that the trial court's grant of summary judgment in favor of the appellants was improper because there was a remaining issue of material fact as to whether the contract was voided by application of the financing commitment contingency clause. They maintain that summary judgment was improper for two reasons. First, they assert it was improper because there was a remaining issue of material fact as to whether the appellees had waived the financing contingency clause by telling their real estate agent that "the loan's in place." Second, they claim that it was improper because appellants failed to make a good faith effort to obtain financing because they failed to apply to additional lenders after their application to NovaStar was denied before the closing date and before the thirty day time period to obtain a financing commitment specified in the purchase agreement.

## III.

### A.   Good Faith Efforts and the Financing Contingency Clause

When a contract for the purchase of real property contains a financing contingency clause, Maryland law follows the common law rule and imposes an implied obligation on the buyer to take "bona fide, reasonable and prompt action to obtain the financing specified" in the clause. *See Traylor v.*

*Grafton,* 273 Md. 649, 689, 332 A.2d 651, 675 (1975). The question presented in this case is the interaction between this implied obligation and the express requirements imposed on the appellants by ¶ 20 of the purchase agreement.

To resolve this question, we must interpret the language of ¶ 20 of the agreement. Under Maryland law, the interpretation of a contract, including the question of whether the language of a contract is ambiguous, is a question of law subject to *de novo* review. *See Towson v. Conte,* 384 Md. 68, 78, 862 A.2d 941, 946 (2004). We have long adhered to the objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation. *Id.* at 78, 862 A.2d at 946–47. Under the objective theory:

> "A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."

*Dennis v. Fire & Police Employees Ret. Sys.,* 390 Md. 639, 890 A.2d 737, 747 (2006) (quoting *General Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985) (internal quotations omitted)).

The resolution of the dispute between appellants and appellees requires us to determine the proper construction of the first sentence of ¶ 20, which provides that "[b]uyer agrees to make written application for the financing as herein described within five (5) days from the date of Contract Acceptance." In particular, we need to determine *how many* financing applications this provision obligates the buyer to make.

Applying the objective theory of contract interpretation, we conclude that the first sentence of ¶ 20 imposes an obligation

on the buyer only to make one application for the financing described in ¶ 19. Given that the sentence does not contain an article directly preceding "written application," a reasonable person reading this language would assume that "a," the indefinite article, was intended. The indefinite article, when used in this way, is synonymous with "at least one." *See, e.g., Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed.Cir. 1997) (interpreting a similar use of the indefinite article in a patent claim to mean "one or more"). We hold that appellees would only need to make one written application for the financing described in ¶ 19 to discharge their express obligation under the first sentence of ¶ 20.

With the issue of the proper construction of the first sentence of ¶ 20 resolved, we turn to the issue of the interaction between the express obligations imposed on appellants by the financing contingency clause and the common law implied obligation to take bona fide, reasonable, and prompt action to obtain the financing specified in the clause. In *District Realty Title Insurance Corp. v. Jack Spicer Real Estate, Inc.*, 280 Md. 422, 426, 373 A.2d 952, 955 (1977), we held that "[a]s a general rule, implied terms of a contract are utilized only in order to supply the place of a missing express term; therefore, where an express term exists, it negatives an implied, inconsistent term relating to the same aspect of the contract." The application of this holding resolves the issue before us.

In *District–Realty*, we applied this principle concerning the relation between express and implied terms to a dispute over a title insurance contract. Spicer contracted to purchase real property, which he intended to finance with the proceeds of a deed of trust loan on the property. *Id.* at 424, 373 A.2d at 953–54. The mortgage company that made the loan conditioned the granting of the loan upon its obtaining a first lien on the property. *Id.* at 424, 373 A.2d at 954. As a result, Spicer provided the mortgage company with an interim binder issued by District–Realty. *Id.* Afterwards, Spicer obtained a combination mortgagee-owner title insurance policy from District–Realty. *Id.* at 424–25, 373 A.2d at 954. When, after settlement, Spicer's attorney absconded with the $8,000.00 he

was to pay to the vendor of the property, Spicer initiated an action to recover this amount under its title insurance policy with District–Realty. *Id.* at 425, 373 A.2d at 954. The trial court, after a bench trial, ruled in favor of Spicer, concluding that, even though the title insurance policy did not expressly cover settlement, there was an implied obligation under the policy to give Spicer clear title, and that this implied obligation was breached because the attorney's failure to deliver the funds to the vendor after settlement caused a vendor's lien to arise on the property. *Id.* at 425–26, 373 A.2d at 954–55.

We reversed the judgment of the trial court, holding that the court erred in concluding that there was such an implied obligation under the title insurance policy. *Id.* at 426, 373 A.2d at 955. We began by holding that the interim binder provision was incorporated into the title insurance contract between Spicer and District–Realty. *Id.* Then, we applied the general rule discussed above concerning the relation between express and implied contract terms and held that there was no implied obligation under the title insurance contract to provide title free of vendor's liens, because the interim binder provision excluded coverage for vendor's liens. *Id.* at 426–29, 373 A.2d at 955–56.

Applying the rule concerning the relation between express and implied contract terms we employed in *District–Realty* to the present case, we hold that, to the extent that the implied obligation to take bona fide, reasonable, and prompt action to obtain the financing specified in a financing contingency clause in a real estate sale contract would under the facts of this case impose an obligation on appellants to make more than one bona fide and reasonable application for a financing commitment, this obligation to make more than one such application is negated by the express provision in the first sentence of ¶ 20 that, as we held *supra*, imposes an obligation on the appellants only to make one such application.[4] As we held in *District–Realty*, an express term negates

4. It is important to note two things concerning the scope of this holding. First, we note that we need not, and do not, pass judgment on

"an implied, inconsistent term relating to the same aspect of the contract." *Id.* at 426, 373 A.2d at 955. The implied obligation to take bona fide, reasonable, and prompt action to obtain the financing specified in a financing contingency clause, to the extent it imposes an obligation to make more than one bona fide, reasonable written application for a financing commitment, is inconsistent with the first sentence of ¶ 20, which obligates appellants only to make one such application. Therefore, following *District–Realty*, it is negated by the express provision contained in the first sentence of ¶ 20.

Our interpretation of the financing contingency clause is similar to the treatment of real estate contract financing contingency clauses in other jurisdictions. In *Stevens v. Cliffs at Princeville Associates*, 67 Haw. 236, 684 P.2d 965 (1984), the Supreme Court of Hawaii addressed the issue of whether a real estate buyer had used due diligence in attempting to obtain financing. The real estate contract in *Stevens* contained a financing contingency clause that, like the clause in the instant case, expressly indicated that a single application for financing was sufficient to discharge the buyer's obligation to seek to obtain the financing specified in the contract. *Stevens*, 684 P.2d at 969 n. 2.[5] The *Stevens* court held that,

whether the implied duty to take bona fide, reasonable, and prompt action to obtain the financing specified in a financing contingency clause would have obligated appellants to make more than one application if ¶ 20 were excluded from the purchase agreement. Second, we emphasize that the express provision in the first sentence of ¶ 20 negates the implied obligation to take bona fide, reasonable, and prompt action to obtain the financing specified in the purchase agreement *only to the extent* that it imposes an obligation inconsistent with the obligation imposed by the express provision. Thus, the express provision does not negate the implied obligation to the extent that it imposes an obligation on the appellants to make a bona fide, reasonable effort to obtain the financing specified in ¶ 19 of the purchase agreement via the written application for a financing commitment contemplated by ¶ 20.

5. The contract language in *Stevens* specifying the buyer's obligation to apply for financing read as follows:

"If Buyer requires financing, he shall, within ten (10) days after receiving notice of Seller signing this Contract, *apply to one or more*

under this clause, the buyers discharged their obligation by making one good faith application for financing. *Id.* at 971. Although the buyers in *Stevens* did attempt to obtain additional financing, the court expressly held as a matter of law that the buyers were not obligated to apply to alternate lenders. *Id.; see also Fallah v. Hix,* 268 A.D.2d 501, 702 N.Y.S.2d 352, 353 (N.Y.App.Div.2000) (holding that buyer who made only one application for financing exercised due diligence in seeking financing under real estate sale contract because "the contract did not require the [buyer] to apply to more than one lender").

By contrast, cases that have held that the implied duty to take bona fide, reasonable, and prompt action to obtain the financing specified in a financing contingency clause may not be satisfied simply by making one application for financing are distinguishable from the instant case and from *Stevens,* as the financing contingency clauses in these cases did not contain express language indicating the number of applications for financing that the buyer was obligated to make. *See, e.g., Betnar v. Rose,* 259 Ark. 820, 536 S.W.2d 719, 720, 723–24 (1976) (holding that there was an issue of material fact as to whether buyers made reasonable efforts to obtain financing under provision of escrow agreement providing that the "Escrow Deposit is to be refunded back to [buyer] if a loan cannot be obtained," where the buyer made one application for financing and was rejected, and there was evidence that other lenders were willing to lend to the buyer); *Fry v. George Elkins Co.,* 162 Cal.App.2d 256, 327 P.2d 905, 906–07 (1958) (upholding trial court finding that buyer failed to make a good faith attempt to obtain refinancing of loan encumbering property despite having made two applications for the specified refinancing, where the relevant contract provision provided that "[t]he completion of this escrow is subject to buyer being able to refinance [the loan encumbering the property] to

---

lending institutions suggested by the Seller for such loan or to any other lending institution and, on request, promptly sign and deliver all documents and diligently take all steps necessary to obtain such loan."
*Stevens,* 684 P.2d at 969 n. 2 (emphasis added).

$20,000.00 at 5% per annum, maturing over a period of 20 years").

In reliance on our holding that the appellants were obligated to make only one bona fide, reasonable application for the financing specified in ¶ 19, the trial court's grant of summary judgment in favor of the appellants on the issue of whether appellants discharged their obligations under the financing contingency clause was correct. The standards for our review of a trial court's grant of summary judgment are well-settled; we briefly review them here. The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal. *Livesay v. Baltimore*, 384 Md. 1, 9, 862 A.2d 33, 38 (2004). In reviewing a grant of summary judgment under Md. Rule 2–501, we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *Id.* at 9–10, 862 A.2d at 38. We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party. *Id.* at 10, 862 A.2d at 38.

Applying these standards to the instant case, we conclude that there were no remaining issues of material fact with respect to whether the appellants had failed to fulfill their obligations under the financing contingency clause. As a preliminary matter, we hold, as did the trial court, that the June 6th addendum created a new contract, as the original contract was void for failure of a condition precedent. The May 4th addendum made the appellants' obligation to go through with the purchase contingent upon their entering into a contract for the sale of their then-current home by May 24th. As appellants did not enter into such a contract by May 24th, time was of the essence with respect to this portion of the contract, and appellees were not responsible for appellants failure to enter into such a contract, the sale contract entered into on April 12th was void for failure of a condition precedent. *See Kimm v. Andrews*, 270 Md. 601, 612–15, 313 A.2d 466,

472–74 (1974) (where time is of the essence with respect to a condition precedent, general rule is that contract "is no longer viable" unless failure of the condition is due to the conduct of the party not seeking to enforce the contract). Thus, as the parties do not dispute that they intended to be bound by the June 6th addendum, it gave rise to a second contract for sale, and was not simply a modification of the original contract.

■ With this preliminary matter clarified, we turn to the summary judgment motion itself. The facts that appellees pointed to in their opposition to the appellants' summary judgment motion all tended to show that appellants failed to act to obtain alternate financing after their initial application to NovaStar was rejected because of the low appraisal. Appellees did not point to any facts that would give rise to an inference that appellants acted in bad faith or acted unreasonably with respect to their initial application to NovaStar. Given our holding that the financing contingency clause did not place any further obligation upon the appellants, it follows that the undisputed facts in the case establish that appellants discharged their obligations under the financing contingency clause. Accordingly, the trial court's grant of summary judgment to appellants on this issue was proper, as the appellants were entitled to judgment as a matter of law. The financing contingency clause created a condition precedent to the appellants' obligation to go through with the purchase of the property. *See Traylor,* 273 Md. at 688, 332 A.2d at 674–75. When appellants failed to obtain a written financing commitment for the financing described 30 days after the June 6th acceptance date, despite having fulfilled their obligations under the financing contingency clause to obtain such financing, the condition precedent was not satisfied, appellants no longer had any obligation to complete the purchase of the property, and were entitled to the return of their deposit by the express terms of ¶ 20.

### B. Waiver of the Financing Contingency Clause

■ In addition to arguing that appellants failed to fulfill their implied obligation under the financing contingency clause

to make a good faith effort to seek the specified financing, appellants argue that appellants waived the financing contingency clause by telling appellants' real estate agent, that "the loan's in place." We reject this argument because the record does not contain any evidence tending to show that the agent ever related the substance of this comment to the appellees, directly or indirectly.

It is well-established as a general rule that "the parties [to a contract] by their conduct may waive the requirements of [the written contract]." *Questar v. Pillar,* 388 Md. 675, 686, 882 A.2d 288, 294 (2005) (alterations in original) (quoting *University Nat'l Bank v. Wolfe,* 279 Md. 512, 522, 369 A.2d 570, 576 (1977)). A performance condition created by a financing contingency clause in a real estate sale contract may be waived by the party "for whose benefit the condition was made." *Traylor,* 273 Md. at 688, 332 A.2d at 674–75. Waiver, in general, is " 'the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.' " *Creveling v. GEICO,* 376 Md. 72, 96, 828 A.2d 229, 243 (2003) (quoting *Food Fair v. Blumberg,* 234 Md. 521, 531, 200 A.2d 166, 172 (1964) (citations omitted)). A waiver of a contractual provision must be clearly established and will not be inferred from equivocal acts or language. *Questar,* 388 Md. at 687, 882 A.2d at 294.

*Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 322 A.2d 866 (1974), is instructive on the waiver issue presented in the case *sub judice. Canaras* involved a dispute over an employment contract. *Id.* at 339, 322 A.2d at 867. The employment contract at issue provided for a one year term of employment commencing on December 1, 1971. *Id.* at 340–41, 322 A.2d at 868. The contract also contained a renewal option, which, if exercised, would give rise to an addition five year term of employment. *Id.* at 341, 322 A.2d at 868. The renewal option provided that the renewal would be effected automatically unless the employee was given written notice of the employ-

er's intention not to exercise the option "at least nine full months prior to November 1, 1972." *Id.* Because of reluctance on the part of the employer to enter into the contract, it was not executed until May 18, 1972, after the time period specified in the renewal provision for the employer to notify the employee of its intention not to exercise the renewal option had expired. *Id.* at 341–42, 322 A.2d at 868–69.

The employee, Canaras, argued that the employer, Lift–Truck, had waived the provision in the contract permitting it to avoid being bound to the additional five year term by executing the contract after the time for providing written notice of its intention not to renew had passed. *Id.* at 357, 322 A.2d at 877. We rejected Canaras' implied waiver argument. *Id.* In discussing the requirements for finding of an implied waiver, we drew on Williston, who said that a waiver "may result from implication and usage, or from any *understanding between the parties* which is of a character to satisfy the mind that a waiver is intended." 5 Williston, LAW OF CONTRACTS § 678 (3d ed.1961), *quoted with approval in Canaras*, 272 Md. at 360–61, 322 A.2d at 879. Following this, the Court explained its rationale for rejecting Canaras's waiver argument, noting that "[t]here was no evidence offered that at the time the contract came to be executed—or thereafter—the principals of Lift Truck made any statements to Canaras, nor is there any evidence of any conduct on their part from which it could be said that there was an intentional relinquishment of the rights [under the renewal option]." *Canaras*, 272 Md. at 361–62, 322 A.2d at 879.

Similar reasoning resolves the waiver issue in the present case. Appellees' waiver argument rests solely on evidence that appellants told Ms. Weingartner, their real estate agent, that "the loan's in place." Thus, in the absence of any evidence tending to show that Ms. Weingartner subsequently relayed this statement to appellees, no rational trier of fact could conclude that there was an express agreement between the parties to waive the financing contingency clause, because no such agreement could have been reached without some manifestation on the part of appellants to the appellees. Nor,

following *Canaras,* could any rational trier of fact conclude that appellants' statement to Ms. Weingartner, standing alone, constituted an implied waiver, as this likewise would have required some manifestation on the part of appellants to the appellees, without which there could be no "understanding between the parties" that the appellants intended to relinquish the right to avoid their contractual obligations if they could not obtain financing. *See also BarGale Indus. v. Robert Realty,* 275 Md. 638, 645, 343 A.2d 529, 534 (1975) (holding that acceptance of a mortgage commitment for less than the amount specified in the contract "was a waiver of that condition and *a manifestation by the promissor* to forego the benefit of that condition" (emphasis added)). Therefore, the grant of summary judgment in favor of the appellants on the waiver issue was proper.

## C. Attorney's Fees

We now turn to the final issue, the trial court's denial of the appellants' claim for attorney's fees. Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland. *See, e.g., Atlantic v. Ulico,* 380 Md. 285, 316, 844 A.2d 460, 477 (2004). Even in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness. *Id.* at 316, 844 A.2d at 478. The party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request. *Id.* The trial court's determination of the reasonableness of attorney's fees is a factual determination within the sound discretion of the court, and will not be overturned unless clearly erroneous. *Id.*

In the case *sub judice,* the trial court committed an error of law by failing to award appellants any reasonable attorney's fees. Although the determination of reasonableness of attorney's fees is left to the discretion of the trial court, the trial court did not have discretion to refuse to award

fees altogether. The attorney's fees provision in the parties' contract plainly states that the prevailing party *"shall* be entitled to receive reasonable attorney's fees from the other party" (emphasis added). Under the trial court's disposition of the case, appellants were the prevailing parties in the litigation under the contract, and were therefore entitled them to recover their legal expenses, to the extent the fees charged were reasonable.

The trial court's legal conclusion that the June 6th addendum gave rise to a new contract, although correct, does not justify its refusal to award appellants reasonable attorney's fees. The June 6 addendum provided that "all other terms and conditions will remain in full force" from the original purchase agreement, save the revised purchase price and the revised contingency clause relating to the sale of the appellants' current residence. Consequently, the contract that arose as a result of the June 6th addendum included the same provision relating to the award of attorney's fees as did the original contract of April 12, 2002. Therefore, that a second contract arose as a result of the June 6th addendum does not provide grounds for the trial court's decision not to award reasonable attorney's fees to appellants.

*JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AFFIRMED IN PART AND RE-VERSED IN PART. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.*