971 A.2d 360

**WELLS FARGO BANK, N.A., Trustee**

**v.**

**DIAMOND POINT PLAZA LIMITED PARTNERSHIP, et al.**

**No. 666, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

May 8, 2009.

---

12. As indicated, there is no claim here that the fees awarded were not reasonable.

K. Donald Proctor (Margaret M. McKee, Proctor & McKee of Towson and Jeff Joyce of Houston, TX, on the brief), for appellant.

William J. Murphy (John J. Connolly, Murphy & Shaffer LLC on the brief), of Baltimore, for appellee.

Panel: WOODWARD, MATRICCIANI and JAMES A. KENNEY, III (Retired, specially assigned), JJ.

MATRICCIANI, J.

The litigation giving rise to this appeal has its genesis in November 2002, when Diamond Point Plaza Limited Partnership, owner of a shopping center in Baltimore County, defaulted on a mortgage loan that was secured by the shopping center property. Appellant Wells Fargo Bank, N.A. ("Wells Fargo"), as trustee for the assignees of the mortgage, brought an action in the Circuit Court for Baltimore County against two sets of defendants: the Konover Defendants, appellees in the appeal now before us, and the Wal–Mart Defendants.[1] Wells Fargo alleged breach of contract, fraud and misrepresentation, and conversion of funds against the Konover Defendants, and breach of lease agreement provisions against the Wal–Mart Defendants.

Following a bench trial and various earlier rulings, including a partial summary judgment in favor of the Wal–Mart Defendants concluding that they did not violate a radius restriction in the lease, the circuit court ruled in favor of Wells Fargo. The court entered judgment against the Konover Defendants in the amount of approximately $22.8 million, roughly $3.5 million of which, plus interest, was identified as a "prepayment premium," and against the Wal–Mart Defendants in the amount of approximately $1.3 million. Despite evidence of contractual provisions providing for attorney's fees, the court ruled that Wells Fargo had not satisfied its burden of proof because it had failed to itemize and apportion its fees among the various defendants and claims.

Wells Fargo appealed the court's ruling on attorney's fees, and both sets of defendants appealed the court's rulings on the merits. On appeal before this Court, we affirmed in part and

---

1. The Konover Defendants, as listed in Wells Fargo's original complaint, included Michael Konover and several entities in which he had an interest: Diamond Point Plaza Limited Partnership, Oriole Commercial Associates Limited Partnership, American Way Commercial Associates Limited Partnership, Diamond Point Management Corporation, Konover Management Corporation (now known as Peerless Corporation), and MCK, Inc. The Wal–Mart Defendants included Wal–Mart Stores, Inc. and Sam's P.W., Inc.

vacated in part the circuit court's judgments on the merits. *Wells Fargo Bank Minnesota, N.A. v. Diamond Point Plaza L.P.*, 171 Md.App. 70, 908 A.2d 684 (2006). We also vacated the circuit court's judgments regarding attorney's fees and remanded the case for further hearings on that issue.

The Court of Appeals granted cross-petitions for writs of certiorari, *Wal–Mart v. Wells Fargo*, 396 Md. 524, 914 A.2d 768 (2007), and affirmed this Court's judgment with respect to the Konover Defendants on both the merits and the issue of attorney's fees. *Diamond Point Plaza L.P. v. Wells Fargo Bank, N.A.*, 400 Md. 718, 929 A.2d 932 (2007).

On remand in the Circuit Court for Baltimore County, the Konover Defendants filed a pre-hearing memorandum opposing Wells Fargo's request for attorney's fees. In that memorandum, the Konover Defendants argued that any award of attorney's fees would be unreasonable because the circuit court had erroneously overcompensated Wells Fargo in its original judgment by including the $3.5 million prepayment premium, which the Konover Defendants argued was never due under the loan documents.[2] The court agreed with the Konover Defendants, stating that, although Wells Fargo met its burden in proving that it was entitled to $1,443,208.81 in attorney's fees, that award was unreasonable given the court's previous error. Consequently, the circuit court denied Wells Fargo any attorney's fees.[3]

Wells Fargo appealed that judgment, and presents one issue for our review:

Whether the circuit court erroneously refused to award Wells Fargo attorney's fees in the amount of $1,443,208.81 from the Konover Defendants on the ground that the court's earlier final $23,674,331.06 judgment against those Defen-

---

**2.** Rule 1.5 of the Maryland Lawyer's Rules of Professional Conduct prohibit attorneys from collecting unreasonable fees.

**3.** The circuit court entered judgment against the Wal- Mart Defendants for attorney's fees in the amount of $753,097. The Wal–Mart Defendants have satisfied all judgments against them, and they are not a party to this appeal.

dants improperly included a prepayment premium of $3,546,437.05.

For the reasons we explain, we reverse the circuit court's judgment.

## FACTS AND PROCEEDINGS

The Diamond Point Plaza shopping center, owned by Diamond Point Plaza Limited Partnership, was developed in 1988 and consists of three buildings containing space for commercial tenants. Two of its largest tenants were Sam's P.W., Inc. ("Sam's"), which operated a Sam's Club wholesale store, and Ames Department Stores ("Ames"). Ames filed for bankruptcy in August 2001, and closed its store at Diamond Point Plaza in October 2002. Sam's closed its store at Diamond Point Plaza in July 2002. Sam's continued to pay monthly rent but Ames did not, rejecting its lease in bankruptcy court.

As a result of Ames' failure to pay rent to Diamond Point Plaza Limited Partnership, Diamond Point Plaza Limited Partnership failed to make its November 2002 loan payment to Wells Fargo. In March 2003, Wells Fargo filed its initial complaint, which it later amended three times.

Following a six-day trial that began on April 4, 2005, the court requested that the parties submit Proposed Findings of Facts and Conclusions of Law. The court reviewed the parties' submissions, and in August 2005, the court issued its Findings of Fact and Conclusions of Law.[4] In those Findings of Fact and Conclusions of Law, the court found, *inter alia*, both that "[t]he prepayment premium is due regardless of whether the Borrower voluntarily chooses to repay the Loan or the Borrower defaults on the Loan," and, "[u]nder the Mortgage and other applicable Loan Documents, Diamond Point [Plaza Limited Partnership] agreed to reimburse Wells Fargo its reason-

---

4. The circuit court amended its Findings of Fact and Conclusions of Law on August 24, 2005, and again in its Amended Final Judgment, entered December 5, 2005.

able and necessary attorney's fees incurred in enforcing the Loan Documents."

The court also adopted Wells Fargo's itemized calculation of damages, which totaled $22,862,399.66, and which included a line item entitled "Prepayment premium" in the amount of $3,546,437.05. In its Final Amended Judgment, entered on December 5, 2005, the court stated:

Judgment in favor of Plaintiff, Wells Fargo bank, N.A., as trustee, is hereby entered against Defendants, Diamond Point Plaza Limited Partnership, Oriole Commercial Associates Limited Partnership and Diamond Point Management Corporation for breach of ¶ 55(A) and (B) of the Mortgage for intentional misrepresentation and gross negligence and against Defendant, Konover Management Corporation, now known as Peerless Corp., for breach of the Guaranty of Recourse Obligations, under Counts 1, 2, 3, and 4 of the Third Amended Complaint, in the amount of $22,862,399.66 ... together with prejudgment interest thereon at the rate of $5,799.51 per day from April 5, 2005, [or] $811,931.40, [which totals $23,674,331.06,] and post-judgment interest from the date of entry of Final Judgment until finally paid. This judgment is entered jointly and severally against each of these Defendants.

The court also reiterated its conclusion that, "for the reasons stated on the record on August 24, 2005," Wells Fargo "has not met its burden of proof for its claims to recover its reasonable and necessary attorney's fees incurred in connection with pursuing its claims for judgment against Defendants, Diamond Point Plaza Limited Partnership, Konover Management Corporation now known as Peerless Corp., Oriole Commercial Associates Limited Partnership, and Diamond Point Management Corporation pursuant to [the Note] and related loan documents." On August 24, 2005, the court explained that it did not find Wells Fargo's request for attorney's fees reasonable because it had not adequately itemized and apportioned its fees among the various defendants and claims. On that point, the court stated: "I don't believe it is possible that fees are reasonable and necessary without undertaking a line-

by-line analysis of each legal bill. Most reluctantly, I don't believe that is possible."

On appeal before this Court, we affirmed in part and vacated in part the circuit court's judgments on the merits. *Wells Fargo*, 171 Md.App. at 137, 908 A.2d 684. Notable to the appeal now before us, we affirmed the circuit court's calculation of damages against the Konover Defendants. *Id.* at 125, 134–37, 908 A.2d 684. On the issue of attorney's fees, we acknowledged the complexity of the case, but nevertheless stated that, instead of completely denying Wells Fargo attorney's fees, the circuit court "should have compelled Wells Fargo to resubmit the bills for which it sought payment with a clearer indication of exactly what those charges represented." *Id.* at 110, 908 A.2d 684. Consequently, we vacated the circuit court's judgment regarding attorney's fees and remanded the case for further hearings on that issue. *Id.* at 110–11, 908 A.2d 684.

The Court of Appeals affirmed the circuit court's judgments with respect to the Konover Defendants, but like this Court, concluded that "the case must be remanded for reconsideration of attorney's fees." *Diamond Point*, 400 Md. at 727, 929 A.2d 932. Specifically, the Court stated that the circuit court incorrectly regarded "the requirement of a line-by-line analysis [not] as a mere preference, but as [a] legal requirement that was not met." *Id.* at 760, 929 A.2d 932. Characterizing that view as "too rigid," the Court stated that, although "the best evidence ordinarily would be a clear delineation in the attorneys' billings of the time spent and expenses incurred with respect to the particular claims upon which the fee request is based[, b]ecause such a precise delineation may not always be practicable, however, we do not regard it as a *sine qua non* of the right to recover, for to conclude otherwise would, in many cases, deny *all* recovery where *some* recovery is clearly warranted." *Id.* at 760–61, 929 A.2d 932. The Court's mandate read, in pertinent part:

JUDGMENT OF COURT OF SPECIAL APPEALS VA-CATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO CIRCUIT COURT

FOR BALTIMORE COUNTY FOR FURTHER PRO-
CEEDINGS WITH RESPECT TO WELLS FARGO'S
CLAIM FOR ATTORNEY'S FEES IN ACCORDANCE
WITH THIS COURT'S OPINION BUT OTHERWISE TO
AFFIRM JUDGMENTS OF THE CIRCUIT COURT[.]

*Id.* at 762, 929 A.2d 932.

On remand before the circuit court, the Konover Defendants filed a Memorandum of Law in Opposition to Plaintiff's Request for Attorney's Fees. In that memorandum, the Konover Defendants argued that the circuit court had erred in including the prepayment premium in its judgment, and requested that the court take that error into consideration when ruling on Wells Fargo's request for fees. At the conclusion of a lengthy hearing, the circuit court made its ruling from the bench on May 21, 2008. The court noted that Wells Fargo requested nearly $2.8 million in attorney's fees, but after a detailed analysis, it concluded that the amount of fees for which Wells Fargo had satisfied its burden of proof was $1,443,208.81. The court continued:

> That's the amount that I would award if it were not for another argument made by the [Konover] Defendants.
>
> The total judgment that was awarded against those defendants was $23,674,331.06, which includes prejudgment interest. And that was the number I took off of [one of Wells Fargo's attorney's fees hearing exhibits]. I didn't go back to the amended judgment, but I'm going to assume it's the same.
>
> For the reasons that were set forth in the [Konover Defendants'] Memorandum of Law in Opposition to Plaintiff's request for attorney's fees concerning the [prepayment] premium, the Court is not going to award fees against the [Konover Defendants] in this matter.
>
> The [prepayment] premium that was previously awarded in this case as well as the prejudgment interest and all of the other fees and costs which are contained in that amended judgment are, in this Court's judgment, sufficient to cover the attorney's fees which have been sought in this

proceeding. Awarding another million dollars in fees would, in this Court's view, be unreasonable under these circumstances.

Wells Fargo noted a timely appeal.[5]

## DISCUSSION

Wells Fargo argues that the circuit court erred in denying its request for attorney's fees by improperly reconsidering the inclusion of the prepayment premium in the court's original judgment against the Konover Defendants. Wells Fargo argues that the court's denial on that ground violated the doctrines of res judicata, the law of the case, and the mandate rule. Wells Fargo alternatively argues that the court erred in reconsidering its earlier judgment insofar as Rule 1.5 of the Maryland Rules of Professional Conduct does not permit the outright denial of a contractually-based attorney's fees award on considerations unrelated to the rendering of legal services. Again in the alternative, Wells Fargo argues that, even if those doctrines or that rule did not preclude the court's consideration of its inclusion of the prepayment premium in its original judgment, the court erred in concluding that it had erroneously included the prepayment premium because Wells Fargo was entitled to it under the loan documents.

The Konover Defendants concede that they "did not introduce evidence or present arguments specifically contesting the prepayment premium" in the original trial in the circuit court. Indeed, they concede that they did not notice the alleged error until new counsel began representing them in the dispute over attorney's fees following remand from the Court of Appeals. Nevertheless, they argue that the court was not precluded

---

5. The Konover Defendants filed a cross-appeal to address errors in the circuit court's calculation of the approximately $1.4 million in attorney's fees it would have awarded Wells Fargo had Wells Fargo challenged that calculation on appeal. In their brief, the Konover Defendants state that, "[b]ecause Wells Fargo has not challenged the significant reductions in Wells Fargo's fee request that led to the $1.443 million alternative figure, the [Konover Defendants] hereby abandon their cross-appeal."

from reconsidering its prior alleged error by res judicata, the law of the case, or the mandate rule.

We begin our analysis with a brief discussion of res judicata and its legal relative, collateral estoppel. It is well settled that the function of both doctrines is "to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Colandrea v. Wilde Lake Community Ass'n, Inc.,* 361 Md. 371, 387, 761 A.2d 899 (2000) (citations omitted). Although the term "res judicata" has historically been used interchangeably to mean either res judicata (also known as claim preclusion) or collateral estoppel (also known as issue preclusion), *see Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (noting the older practice of using res judicata to describe both res judicata and collateral estoppel, and noting a more recent tendency to apply the label of res judicata only to matters of claim preclusion), the Court of Appeals has emphasized that "there is a distinction between the principles of res judicata and collateral estoppel." *Colandrea,* 361 Md. at 387–88, 761 A.2d 899 (citations omitted).

In *Colandrea,* the Court explained that distinction as follows:

> [I]f a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding. If a proceeding between parties does not involve the same cause of action as a previous proceeding between the same parties, the principle of collateral estoppel applies, and only those facts or issues actually litigated in the previous action are conclusive in the subsequent proceeding.

*Id.* at 388, 761 A.2d 899. The *Colandrea* Court went on further to distinguish the doctrines by explaining that, " '[c]ollateral,' for collateral estoppel purposes, denotes that the estopping influence came into the case in issue from some other outside case, and in the context of a single case, issue-

preclusive operation should actually be called 'direct estoppel.'" *Id.* at 391, 761 A.2d 899 (citation omitted). Indeed, "[c]ollateral [or direct] estoppel [are] not concerned with the legal consequences of a judgment, but only with the findings of ultimate fact, when they can be discovered, that necessarily lay behind that judgment." *Id.* (citation omitted).

█ In arguing that the circuit court was precluded by the doctrine of res judicata from reconsidering on remand its inclusion of the prepayment premium into its calculation of damages against the Konover Defendants, Wells Fargo is essentially using the term res judicata interchangeably with collateral estoppel, or, more specifically, direct estoppel. Thus, when Wells Fargo argues that, "although the doctrine of res judicata usually is applied to preclude the relitigation of issues between the same parties in a subsequent case, it has particular application here where a final judgment (which includes the prepayment premium) has been entered and that judgment has been affirmed in all respects by the Court of Appeals," we understand it to be arguing that the circuit court was precluded from reconsidering its inclusion of the prepayment premium by the doctrine of direct estoppel. That argument clarified, we agree with Wells Fargo.

On this point, we find *Stavely v. State Farm Mut. Auto. Ins. Co.*, 376 Md. 108, 829 A.2d 265 (2003), particularly instructive. In *Stavely,* an insurer refused to renew an insured's motor vehicle insurance policy. *Id.* at 110, 829 A.2d 265. The insured filed a protest with the Maryland Insurance Administration ("MIA"), and after investigation, the MIA affirmed the insurer's action. *Id.* The insured requested an administrative hearing, and a hearing was held before Administrative Law Judge ("ALJ") James G. Klair. *Id.* ALJ Klair found in favor of the insured, finding that the insurer's basis for not renewing the insured's policy was insufficient as a matter of law. *Id.* ALJ Klair did not rule on the insured's request for attorney's fees; he instead held that ruling in abeyance pending submission of any objections by the insurer. *Id.* The insurer sought judicial review of the ALJ's decision in the Circuit Court for Baltimore City, and that court reversed,

believing the ALJ's decision arbitrary and capricious. *Id.* at 111, 829 A.2d 265.

The insured appealed the circuit court's ruling to this Court, and we reversed and reinstated ALJ Klair's decision. *Id.* The insurer filed for and was granted certiorari by the Court of Appeals, but the Court later dismissed the insurer's writ as having been improvidently granted. *Id.* After the mandate issued, the insured filed a motion for attorney's fees in the circuit court. *Id.* The circuit court remanded the case, and ALJ Brian Zlotnick denied the insurer's request on the grounds that the insurer's actions were not "unjustified" under the relevant section of the Insurance Article of the Maryland Code. *Id.* at 111–12, 829 A.2d 265.

The insured sought judicial review of that decision in the Circuit Court for Baltimore City, and that court affirmed ALJ Zlotnick's decision. *Id.* at 112, 829 A.2d 265. The insured appealed to this Court, and we affirmed the circuit court. *Stavely v. State Farm Mut. Auto. Ins. Co.*, 138 Md.App. 1, 769 A.2d 1008 (2001). The insured filed a petition for writ of certiorari in the Court of Appeals, which the Court granted. *Stavely v. State Farm*, 365 Md. 65, 775 A.2d 1216 (2001).

The Court of Appeals first explained that "[t]he decision by ALJ Klair was upheld by the Court of Special Appeals, and this Court dismissed the writ of certiorari. Accordingly, the determination that [the insurer's] proposed [ ] nonrenewal of [the insured's] motor vehicle insurance policy was unjustified, and thus disallowed, became final." *Stavely*, 376 Md. at 115, 829 A.2d 265. The Court noted that ALJ Zlotnick nevertheless reconsidered ALJ Klair's decision when determining the insured's request for attorney's fees. *Id.* The Court stated that the relevant section of the Insurance Article did not authorize an ALJ to make a redetermination of "justification," and thus, "[w]hile the award of attorney's fees is discretionary, the decision against awarding such fees cannot be based on a finding, contrary to the earlier finding, that the proposed action was 'justified.' " *Id.* at 116, 829 A.2d 265.

The Court went on to state that, moreover, "under the facts of the present case, where ALJ Klair had decided that the

proposed nonrenewal was unjustified and the Court of Special Appeals had upheld that decision, ALJ Zlotnick was bound by the earlier determination under principles of res judicata[.]" *Id.* (citing several cases for the proposition that the doctrines of res judicata and/or collateral estoppel apply to administrative decisions). The court remanded the case for a determination of attorney's fees consistent with the Court's opinion. *Id.* at 117–18, 829 A.2d 265.

Although the *Stavely* Court held that ALJ Zlotnick was precluded from redetermining the justification issue "under principles of res judicata," ALJ Zlotnick did not reconsider a claim already litigated and determined by a final judgment; rather, he reconsidered an issue of ultimate fact. Moreover, the issue that the Court held that ALJ Zlotnick was precluded from reconsidering was not from some other outside case, but in the context of the same case. Thus, we conclude that the holding in *Stavely* applies to cases, like the one *sub judice,* involving direct estoppel.[6] Consequently, we conclude that the circuit court was directly estopped from reconsidering the issue of the prepayment premium—which was part of a judgment affirmed by the Court of Appeals and had therefore become final—in determining Wells Fargo's request for attorney's fees. We therefore reverse the judgment of the circuit court.

 Unlike in *Stavely*, where the Court of Appeals reversed the circuit court's judgment and remanded the case for a determination of the reasonableness of the fees sought by the insured, we need not remand the case *sub judice* for any such determination. In general, contract provisions providing for awards of attorney's fees to the prevailing party in litiga-

---

6. The Konover Defendants—the party whom such a conclusion disfavors—concede that, "[i]f the *Stavely* decision meant to apply res judicata principles, it probably meant issue preclusion (or collateral estoppel), as opposed to claim preclusion." Citing the Restatement, they add that, "[i]n fact, when the issue arises in the same action as opposed to a different action, the proper title is direct estoppel rather than collateral estoppel."

tion are valid and enforceable in Maryland. *Myers v. Kayhoe,* 391 Md. 188, 207, 892 A.2d 520 (2006). "Even in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Id.* "The party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request." *Id.* Thus, where, as here, a contract requires the imposition of attorney's fees incurred as a result of a breach, the party in whose favor that provision runs is entitled to its fees to the extent it proves those fees were reasonable. *See id.* at 207–08, 892 A.2d 520.

The circuit court made a finding on the record that Wells Fargo was entitled to $1,443,208.81 in reasonable attorney's fees. Implicit in that finding is the finding that Wells Fargo satisfied its burden of proof. There is no reason to remand the case to the circuit court for a determination that the court has already made. Wells Fargo is therefore entitled to those fees.[7],[8]

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF WELLS FARGO FOR $1,443,208.81 IN ATTORNEY'S FEES AGAINST THOSE KONOVER DEFENDANTS, JOINTLY AND SEVERALLY, AGAINST WHOM THE CIRCUIT COURT WOULD HAVE ASSESSED $1,443,208.81 IN ATTORNEY'S FEES BUT FOR THE INCLUSION OF THE PREPAYMENT PREMIUM INTO THE ORIGINAL JUDGMENT.**

**APPELLEES TO PAY THE COSTS.**

---

7. Because we affirm on direct estoppel grounds, we need not decide whether the circuit court was precluded from reconsidering the prepayment premium issue under the doctrines of the law of the case or the mandate rule.

8. In its brief, Wells Fargo waives its claim to prejudgment interest on the $1,443,208.81 award of attorney's fees and to those attorney's fees incurred in this appeal.