7 A.3d 1

MONMOUTH MEADOWS HOMEOWNERS
ASSOCIATION, INC.

v.

Tiffany HAMILTON.

Montpelier Homeowners Association, Inc.

v.

Bode and Bonike Thomas–Ojo.

Constant Friendship Homeowners Association, Inc.

v.

Kevin Tillery.

Nos. 43, 44 and 45 Sept. Term, 2009.

Court of Appeals of Maryland.

Oct. 25, 2010.

**326**

Craig B. Zaller (P. Michael Nagle, Scott J. Silverman, Zinnaeah D. Johnson and P. Hong Le, Nagle & Zaller, P.C., Columbia), on brief, for petitioners.

Monisha Cherayil (Public Justice Center, Baltimore), on brief (as amicus), for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

ON MOTION FOR RECONSIDERATION

ADKINS, J.

In this appeal we address how courts should determine the amount of attorneys' fees to be awarded in suits by homeowners associations against property owners to collect annual assessments in cases where recovery of fees is governed by contractual provisions in the homeowners agreement. Petitioner homeowners associations (the "Associations") appeal the amount of attorneys' fees awarded to them by the Circuit Courts for Harford and Prince George's Counties. These courts assessed the reasonableness of the attorneys' fees

requested by the Associations and correctly declined to apply the "lodestar method" in calculating fees. We affirm.

## FACTS & LEGAL PROCEEDINGS

The litigation in these cases stems from an attempt to collect attorneys' fees for services rendered to the Petitioners, three homeowners associations (the Monmouth Meadows Homeowners Association, the Constant Friendship Homeowners Association, both in Harford County, and the Montpelier Hills Homeowners Association, in Prince George's County). The legal services in question involved, among other things, the pursuit of delinquent homeowners association fees from residents living within each association (Tiffany Hamilton, Bode and Bonike Thomas–Ojo, and Kevin Tillery, respectively; collectively, the "Residents").[1] These legal services were performed by the law firm of Nagle & Zaller, P.C. ("Nagle & Zaller")

The facts in each case are similar. As a condition of membership in the Associations, the Residents were contractually obligated to pay annual assessments to the Associations. Delinquent assessments resulted in charged interest on past due amounts plus late fees.[2] The Residents were also contractually required to pay costs and attorneys' fees incurred by the Associations in the pursuit of delinquent assessment payments.[3] In each case, the Residents failed to pay the assess-

---

1. The Residents did not file briefs in these cases or enter appearances before this Court. A brief was entered on behalf of the Residents by a coalition of amici curiae, comprising the Public Justice Center, Civil Justice, Inc., the Legal Aid Bureau, and the Maryland Consumer Rights Coalition. At oral argument, the Public Justice Center argued the cases for the Residents, with this Court's approval. For the purposes of this opinion, the arguments presented by amici will stand in the Residents's stead.

2. Hamilton and Tillery were subject to a twelve percent interest charge, while the Thomas–Ojos were subject to interest "not to exceed the maximum legal rate[.]"

3. Hamilton and Tillery were required to pay "reasonable" attorney's fees; the Thomas–Ojos's contract does not specify that the charge was limited to reasonable fees.

ments in a timely fashion and, in each case, the Associations directed Nagle & Zaller to collect on the debt.

Nagle & Zaller contacted the Residents in writing in an effort to resolve their situations, but the Residents did not make payments sufficient to settle their debts. Because the Residents were unable or unwilling to make the required payments, the Associations established and recorded liens on the Residents' properties in accordance with the Maryland Contract Lien Act ("CLA"), which allows for the creation of a lien on real property as the result of a breach of contract. *See* Md.Code (1974, 2003 Repl. Vol.), §§ 14–201 to 206 of the Real Property Article ("RP"). The liens included principal and interest on the assessments owed, court costs, and attorneys' fees. The Associations notified the Residents of the liens in writing, and demanded payment of the debts, as well as attorneys' fees pursuant to the Residents' contractual agreements.

The Associations then initiated suits against the Residents in the District Court, sitting in Harford and Prince George's Counties. In each case, the Associations won affidavit judgments against the Residents in "largely uncontested" proceedings. The Associations also sought attorneys' fees from the Residents in those courts, calculated according to the "lodestar method," which takes as a starting point for a fee award the product of the number of hours reasonably expended on a legal matter and the reasonable hourly rate for the type of work performed.[4] This method could allow the Associations to recover more in fees than the amount of the debt owed by the Residents. The District Court, in each instance, elected not to calculate attorneys' fees under the lodestar method, but rather chose to award fees as a flat percentage of the amounts of

---

**4.** Specifically, the Associations sought to recover $875 in fees and $256.60 in collection costs from Hamilton, on a balance of $556.82 principal and interest plus $80 in court costs; from the Thomas–Ojos, $1,000 in fees and $475.80 in collection costs on a balance of $1,310 principal and interest plus $120 in court costs; and from Tillery, $813 in fees and $121.60 in collection costs on a balance of $614.25 principal and interest plus $110 in court costs.

principal sought in each case.[5] Notably, the District Court sitting in Harford County, which heard both Hamilton and Tillery's cases, informed the Associations that barring a contractual agreement on a percentage fee, "reasonable [attorneys'] fees will be set at 15% of the principal claimed, except in extraordinary circumstances." The Associations appealed these decisions to the Circuit Courts for Harford and Prince George's Counties.

On appeal, the Circuit Courts used different approaches in awarding fees in their respective cases. In the Hamilton and Tillery cases, the Circuit Court for Harford County awarded the fees that the Associations initially requested with the filing of the notice of intent to file a lien, plus fees incurred in the District Court litigation, but nothing for the appeals. In the Thomas–Ojos's case, the Circuit Court for Prince George's County discussed the lodestar method, found that it was not bound to use it, and also took into consideration the guidance presented by Rule 1.5 of the Maryland Lawyers' Rules of Professional Conduct. *See* Md. Rule 16–812. That court concluded that the fees requested by the Montpelier Hills Homeowners Association in that case were unreasonably high for the work actually required, and accordingly reduced the fee award to $300. Like the Circuit Court for Harford County, the court also declined to award fees incurred on appeal.

We granted certiorari to consider four questions,[6] which we have rephrased as follows:

---

**5.** The judgments against Hamilton and the Thomas–Ojos yielded a fee award of fifteen percent of principal in each case. The award against Tillery was initially twenty percent of principal, but was reduced to zero upon the Constant Friendship Homeowners Association's motion for reconsideration; the District Court in that case ruled that the Association had been "more than fully compensated for the efforts put forth in furtherance of the legal action in this Court."

**6.** *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton,* 408 Md. 487, 970 A.2d 892 (2009); *Montpelier Homeowners Ass'n, Inc. v. Thomas–Ojo,* 408 Md. 487, 970 A.2d 892 (2009); *Constant Friendship Homeowners Ass'n, Inc. v. Tillery,* 408 Md. 487, 970 A.2d 892 (2009).

I. Whether the District Courts of Maryland for Harford County and Prince George's County abused their discretion in awarding attorneys' fees based upon a percentage of the principal sought, a practice that they consistently employ in each and every case coming before them?

II. Whether the District Courts of Maryland for Harford County and Prince George's County abused their discretion when they refused to consider any attorneys' fees incurred by Petitioners when they created a lien against Respondents' lots for nonpayment of homeowners association assessments?

III. Whether the Circuit Court for Harford County abused its discretion when it refused to award any attorneys' fees incurred on the appeal of this matter, but determined that all of the attorneys' fees requested in the District Court matter were fair and reasonable and awarded such fees?

IV. Whether the Circuit Court for Prince George's County abused its discretion when it increased the attorneys' fees award given in the District Court to a flat $300.00 with no explanation of what such fee award was for, and refused to award any attorney's fees incurred on the de novo appeal of this matter to that Court? [7]

As all of these cases were heard de novo in their respective Circuit Courts, we review what the Circuit Courts did, not the District Court. We will address the Petitioners arguments as they apply to the Circuit Courts' rulings, after we answer what we perceive to be the Petitioner's principal argument— that the lodestar method of determining attorneys' fees should have been applied in these cases.

## DISCUSSION

■ We review a trial court's award of attorneys' fees under an abuse of discretion standard. *See Myers v. Kayhoe,*

---

7. Questions I and II are common to all three cases. Question III is common to Hamilton's and Tillery's cases. Question IV is exclusive to the Thomas Ojos's case.

391 Md. 188, 207, 892 A.2d 520, 532 (2006) (holding that when there are contract provisions requiring the award of attorneys' fees to the prevailing party, the amount of the fees to be award is "within the sound discretion of the trial court").

### The Lodestar Method

 Our previous holdings with respect to attorneys' fees have emphasized that trial courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award. *See, e.g., Meyer v. Gyro Transp. Sys.,* 263 Md. 518, 531, 283 A.2d 608, 615 (1971) (holding that the award of "reasonable attorney's fees" contemplates "a judicial proceeding by the court for the purposes of ascertaining the amount which may reasonably be charged . . . .") (citations omitted). Contractual clauses providing for awards of specific amounts of attorneys' fees are generally valid and enforceable. *See Myers,* 391 Md. at 207, 892 A.2d at 532. Even where such a provision is not explicitly limited to reasonable fees,[8] however-er, "trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Id.* "The party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request." *Id.*

 The Associations argue that the proper way to calculate attorneys' fees in these cases is through the use of the lodestar method. As noted above, a court that uses the lodestar method to calculate a fee award begins by multiplying the number of hours reasonably spent pursuing a legal matter by "a reasonable hourly rate" for the type of work performed. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), *abrogated in part on other grounds, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). This amount is then adjusted by the court, depending on the effect of numerous external factors bearing on the litigation as a whole. For example, the Su-

---

**8.** This is the case with the Thomas–Ojos's contract here.

preme Court has approved a list of twelve factors to be considered in a lodestar analysis in federal court:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron,* 489 U.S. 87, 91 n. 5, 109 S.Ct. 939, 943 n. 5, 103 L.Ed.2d 67 (1989) (*citing Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (1974)). This Court has relied on these factors in lodestar calculations. *See, e.g., Manor Country Club v. Flaa,* 387 Md. 297, 313, 874 A.2d 1020, 1030 (2005). This approach may very well return a fee award that is actually larger than the amount in controversy, as occurred in both Hamilton's case and Tillery's case here.

██ We are not persuaded by the Associations' arguments that the lodestar method is applicable in these cases. We said in *Friolo v. Frankel,* 373 Md. 501, 504–05, 819 A.2d 354, 356 (2003), that the lodestar method of calculating attorneys' fees was generally appropriate in the context of fee-shifting statutes. This holding is justified by the public policy underlying most statutes that allow for fee-shifting. Fee-shifting provisions frequently apply in "complex civil rights litigation involving numerous challenges to institutional practices or conditions." *Friolo,* 373 Md. at 525, 819 A.2d at 368 (*quoting Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941). As the Supreme Court of Alaska has observed, these provisions "are not policy-neutral. They are usually designed to encourage suits that, in the judgment of the legislature, will further public policy goals." *State v. Native Village of Nunapitchuk,* 156 P.3d 389, 403 (Alaska 2007) (footnotes omitted). A court's application of the lodestar method in these cases "is designed to reward

counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that [other methods] would provide inadequate compensation." *Krell v. Prudential Life Ins. Co. of Am.*, 148 F.3d 283, 333 (1998).

■ The policy considerations mentioned above do not apply here because these cases do not involve a fee-shifting statute. The CLA simply permits attorneys' fees provided for in a contract [9] or awarded by a court for breach of a contract to be enforced by establishment of a lien. *See* RP § 14–203. It is by contract, not because of public policy, that the Residents are obligated to pay attorneys' fees to the Associations. Without the public policy underpinnings, attorneys' fees awarded based on contractual obligations that may be enforced with a lien on real property simply do not fit the bases of the lodestar model.

The Associations argue that the cases before us are sufficiently related to advancing the public interest to justify use of the lodestar method in determining reasonable attorneys' fees. The Associations claim that "[h]olding delinquent owners accountable for paying their share of association assessments supports social benefits that extend far beyond the association itself." They allege that they and other homeowners associations provide public services such as street maintenance and security, thus relieving local governments of those obligations.

We are unpersuaded that any tangential benefit the Associations may provide to local government or to the public is sufficient to justify use of the lodestar method in awarding the fees for their attorneys. With this argument, the Associations fail to apprehend a fundamental distinction between the legal liabilities incurred by the Residents in these cases and the legal wrongs that are the subject of public interest litigation under true fee-shifting statutes. The fact remains that this

---

**9.** RP Section 14–201 defines "contract" as "a real covenant running with the land or a contract recorded among the land records of a county or Baltimore City[.]"

litigation arises from disputes between private parties over breaches of contract. Passage of a law by the General Assembly enabling parties to remedy breaches of certain contracts by the creation of liens on a breaching party's property does not constitute a legislative pronouncement that the contracts themselves are so infused with any public interest, or that breaches thereof represent any substantial threat to the public interest. The enactment of RP Section 14–203 merely reflects that the General Assembly chose, as it has done many times, to facilitate the enforcement of legitimate private contractual obligations. The procedure set forth in the statute for creating the lien does not imbue these private contracts with public interest significance of the level protected by the enactment of other fee-shifting statutes. *See Friolo,* 373 Md. at 526, 819 A.2d at 369 (*quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098 (1986)) (holding that fee-shifting statutes are designed to "enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation" of duly enacted laws, and are not intended as "a form of economic relief to improve the financial lot of attorneys[.]"). We hold that the lodestar method is an inappropriate mechanism for calculating fee awards in private, contractual debt-collecting cases. Use of the lodestar method in such cases is inappropriate because they lack the substantial public interest justification underlying its application in the context of true fee-shifting statutes.

 Our rejection of the lodestar approach does not mean that the time spent by the lawyers and a reasonable hourly rate should not be an important component of a court's analysis. Indeed, Rule 1.5(a) of the Maryland Lawyers' Rules of Professional Conduct, which lists factors that should be considered in determining the reasonableness of a fee, identifies "the time and labor required" first in a list of eight factors for determining a reasonable fee.[10] Courts should use the

---

10. Under the Maryland Lawyers' Rules of Professional Conduct:

factors set forth in Rule 1.5 as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties authorizing an award of fees.[11] In reiterating this, we recognize that there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis. *See, e.g., Manor Country Club*, 387 Md. at 313, 874 A.2d at 1030 (discussing lodestar factors). Nonetheless, there is a significant reason for choosing Rule 1.5—unlike the lodestar method, Rule 1.5 does not carry with it the notion that the importance of the right vindicated will justify an expenditure of attorney time that is hugely disproportionate to the dollar amount at issue in the case. Indeed, when applying Rule 1.5, trial judges should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment. Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated.[12] A trial court also

---

The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
Md. Lawyers' R. Prof'l Conduct 1.5(a).

11. We are not suggesting that courts must explicitly comment on or make findings with respect to each factor.

12. A trial court need not always hold an evidentiary hearing to determine a proper fee award, unless there is a material dispute of fact relating to some issue which would bear on the fee award itself. To require such a hearing in every case would excessively interfere with

may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees.

In awarding attorneys' fees when the legal costs are passed on to a third party to the contract agreeing to the fees, trial courts may choose to consider the terms of the contract between the passing party and its attorneys (e.g., between the Associations and Nagle & Zaller). Trial courts are not bound by the monetary amounts in such contracts, however, and need not cleave to the contracts at all if they improperly influence the fee award. If a trial court chooses to consider contract terms, it also should carefully consider the nature of the work performed, and whether there is a risk that certain rote tasks (for example, the filling out and sending of form letters) are being billed at a higher than reasonable rate. This may occur, for example, in a fee contract like Nagle & Zaller's, which uses a hybrid method to determine the fee— with the rote tasks defined and paid by a flat amount and the other work billed at an hourly rate.

We hasten to say, however, that we do not opine on the reasonableness of the fee agreement between the Associations and their attorneys for the purposes of determining any ethical violation by Nagle & Zaller. Although the Rules of Professional Conduct certainly place limitations on how much attorneys may charge their clients, we do not address that issue here, even though we use Rule 1.5 as a rubric for our reasonable fee analysis. When courts are asked to award "reasonable attorneys' fees" against a person or entity not privy to the fee agreement, they act in a different role than a court reviewing a charge by the Attorney Grievance Commission that a specific fee agreed to by an attorney's client was not reasonable.

### The Specific Rulings

We now turn to the specific fee awards granted by the Circuit Courts for Harford County and Prince George's Coun-

---

"the laudable goal of judicial efficiency." *Wright v. State,* 411 Md. 503, 514, 983 A.2d 519, 525 (2009).

ty. We begin this analysis with a review of the agreement between Nagle & Zaller with the Association regarding the fees they will charge for their collection services. The firm charged flat rates for many of the routine tasks involved, which were not tied to the hours spent, and may not have been performed by attorneys. These included the following:

| | |
|---|---|
| Demand Letter | $100.00 |
| Balance Due Letter | $ 50.00 |
| Lien Warning Letter | $175.00 |
| Lien Warning Letter—Posting (if required) | $ 75.00 |
| Suit/Lien Warning Letter | $175.00 |
| Suit/Lien Warning Letter—Posting (if required) | $ 75.00 |
| Lien Statement Preparation | $100.00 |
| Lien Notification Letter | $ 50.00 |
| Suit/Foreclosure Warning Letter | $175.00 |
| Suit Warning Letter | $175.00 |
| Draft Letter & Monitor Informal Payment Plan | $ 50.00 |
| Confessed Judgment Note (Less than two years) | $175.00 |
| Confessed Judgment Note (Greater than two years) | $275.00 |
| Confessed Judgment Demand Letter | $100.00 |
| Non-Sufficient Funds Letter | $ 50.00 |
| Payoff Letter | $125.00 |

The fee agreement specified that "[a]ll other time (telephone calls or meetings with delinquent owners, payment plan administration, follow-up letters, etc.) will be charged to the owner at the hourly rate of the person performing or reviewing the work."

The fee agreement included additional flat-rate charges if suit were filed:

| | |
|---|---|
| Draft and File Complaint | $300.00 |
| Draft and File Amended Complaint | $175.00 |
| Reissue Complaint | $ 50.00 |
| Motion for Alternate Service | $175.00 |
| Complaint for Confessed Judgment | $200.00 |
| Confessed Judgment Affidavit (if required) | $ 50.00 |
| Motion to Amend Judgment | $Hourly |
| Interrogatories in Aid of Execution | $100.00 |
| Request for Oral Exam | $ 50.00 |
| Request for Show Cause | $ 50.00 |
| Request for Body Attachment for Contempt | $ 50.00 |
| Judgment Lien | $ 50.00 |
| Request for Garnishment (wages or bank account) | $100.00 |
| Request for Judgment Garnishment (bank account) | $ 75.00 |
| Post Judgment Demand Letter | $100.00 |

| | |
|---|---|
| Motion to Compel Answers to Interrogatories | $ 75.00 |
| Request for Foreign Judgment | $150.00 |
| Judgment Creditor's Report | $ 75.00 |
| Stipulation Agreement (Less than two years) | $175.00 |
| Stipulation Agreement (Greater than two years) | $275.00 |
| Stipulation Demand Letter | $100.00 |
| Motion for Default Judgment | $200.00 |
| Order and Review Credit Report | $ 50.00 |
| Real Property Search | $ 25.00 |
| Pretrial/Hearing Warning Letter | $ 75.00 |

These flat rate charges were also increased by hourly charges for time spent in "trial preparation and trial."

### The Thomas–Ojos's Case

The analysis by the Circuit Court for Prince George's County encapsulates the approach that we approve in this opinion.[13] The District Court had awarded fees equal to 15% of the amount of principal requested at trial. Although finding this Court's discussion of the lodestar method in *Friolo* "instructive regarding the awarding of attorney fees[,]" the Circuit Court first correctly found that it was not bound to employ that method. The Circuit Court proceeded to consider the reasonableness of such a hypothetical award in light of the factors enumerated in Rule 1.5 of the Maryland Lawyers' Rules of Professional Conduct:

1. *The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.*

Counsel has submitted billing for more than 10 hours of professional service to defend its client in a District Court matter and the appeal instituted therefrom, against a pro se litigant. The entire original District Court proceeding lasted no more than 15 minutes with a judgment in favor of

---

**13.** Although we say that this opinion "encapsulates the approach" we approve here, we do not mean to suggest that a court must always make explicit findings with respect to Rule 1.5 of the Maryland Lawyers' Rules of Professional Conduct, as the Circuit Court did in this case. Nor must a court always mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness.

appellant. It proceeded as an affidavit judgment matter. The appeal proceeded with no opposition by the appellees.

This was a contractual dispute that involved no novel or difficult questions of law and as appellant stated "is ordinary litigation." It did not require any specific level of skill.

*2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer.*

There is no allegation that the client was aware that the firm would be unable to accept other employment. There is a long standing relationship with the firm.

*3. The fee customarily charged in the locality for similar services.*

Nagle & Zaller does not have competitive rates with other law firms in this locality. Documents submitted by appellant purport to show competitive rates. None are reflective of fees charged in Prince George's County.

*4. The amount involved and the results obtained.*

The principal amount sought in this case is $1,281.00. The attorney's fees sought exceed $2,000.00. While there are circumstances in civil cases where the cost of proceedings can exceed the principal amount sought, there must be a reasonable relationship to the amount involved. *See Reistertown [Reisterstown ] Plaza Assoc. v. General Nutrition Center, Inc.* 89 Md.App. 232, 246 [597 A.2d 1049] (1991). In the present case, more than one half of the fees are associated with pursuing additional attorney fees in a case where there has been little or no opposition and constituted "ordinary litigation[.]" There is no reasonable relationship to the amount involved.

*5. Time limitations imposed by the client or by the circumstances.*

Appellant does not argue that this factor has any bearing on the award of attorney fees in this case.

*6. The nature and length of the professional relationship with the client.*

Montpelier Hills Homeowner's Association has been a client of Nagle & Zaller, P.C. for more than ten (10) years.

7. *The experience, reputation, and ability of the lawyer or lawyers performing the services.*

Nagle & Zaller is a firm experienced in the community association law field. The attorney primarily assigned to this case is a member of the Maryland bar with less than 4 years experience.

8. *Whether the fee is fixed or contingent.*

The fees charged by Nagle & Zaller were either flat fees or based on an hourly rate for time. A review of the records noted discrepancies in billing.

In sum, this Court does not find the attorney fees submitted to be reasonable or appropriate under the circumstances. They are, in fact, excessive.

Appellant has also requested payment for court costs, collection costs and interest. While court costs are appropriate as well as prejudgment interest, the request for collection costs has not been properly established and is excessive.

Based on this reasoning, the court reduced the fee award to $300.

Although billing by the hour is perhaps the most well-accepted basis for an attorney's charge to his or her client, other than a contingency fee, Rule 1.5 suggests other factors to be taken into account. The Circuit Court found several reasons to reduce the fee from the amount charged by Nagle & Zaller—the ordinary nature of the suit, the absence of opposition, the relative inexperience of the attorney, and the small principal amount involved. Moreover, the Nagle & Zaller fee schedule is a hybrid one, which sets a flat fee for the rote tasks, increased by hourly charges for attorney time outside of these tasks. The Circuit Court may well have considered the resulting fee too high, particularly because the tasks for which flat fees were assigned had no component for labor expended, and could have been performed by administrative assistants or paraprofessionals. The Association had

the burden of establishing that these flat fee amounts were reasonable for the task performed. *See Myers*, 391 Md. at 207, 892 A.2d at 532. Although $300 is certainly close to the low end of what we consider to be the range of the Circuit Court's discretion, the court used the correct legal standard in evaluating the reasonableness of the fee, and did not abuse its discretion.

### *Hamilton's and Tillery's Cases*

 The Circuit Court for Harford County used a similar approach in addressing Hamilton's and Tillery's cases. In Tillery's case, the court explicitly rejected the application of an arbitrary 15% of principal sought as a reasonable fee award. It appropriately recognized that the error in this approach lay in the automatic application of that percentage, or indeed of any percentage, without a substantive inquiry into the appropriateness of those awards in the cases at bar.[14][15]

Instead, the court considered the services performed by the law firm, which were described on an exhibit offered by the Association as follows:

| Attorney's Fees, Other Costs, and Court Costs | |
|---|---|
| $ 50.00 | Balance Due Letter (4/19/08) |
| $ 75.00 | Settle Letter (7/24/08) |
| $100.00 | (1.0) Paralegal Trial Preparation (7/31/08) |
| $210.00 | (1.0) EKF Trial Preparation (7/31/08) |
| $378.00 | (1.8) EKF Attend Trial (8/1/08) |
| $813.00 | Total |

These charges included and ended with the 1.8 hours that an attorney spent at the District Court trial, at which Mr. Tillery appeared. The court awarded the fees shown in this exhibit, but declined to award the fees requested by the Association

14. Our holding that where an attorney is entitled to reasonable fees under the terms of a contract, that attorney is not permitted to define that amount by use of a percentage of judgment is also instructive. *See Meyer v. Gyro Transp. Sys.*, 263 Md. 518, 531, 283 A.2d 608, 615 (1971).

15. None of the homeowners agreements here called for a percentage of the debt as the appropriate fee award. Thus, we do not address that situation.

for legal work after that point. The court explained that "it's always been my position that reasonable fees are those fees which are, given the nature of the services rendered, the degree of skill, and a whole bunch of other factors ... appropriate."

We reject the Associations's argument, relying on *Friolo*, that the Circuit Court erred in declining to award fees in connection with its appeals to that court. Although we held in *Friolo* that in performing a lodestar analysis on remand, the trial court must consider appellate fees incurred in successful-ly challenging the original fee award, we reiterate that this case does not call for the lodestar method. It does not involve a fee-shifting statute, which is enacted to "ensure that individ-uals, when injured by violations ... of certain laws, have access to legal counsel...." *Friolo v. Frankel,* 403 Md. 443, 457, 942 A.2d 1242, 1250 (2008) (*"Friolo II"*). Thus, the policy reasons for encouraging appeals of inadequate fee awards are not applicable. Of course, a circuit court, in its discretion, *may* award fees incurred in an appeal challenging a district court's fee award.

 Hamilton's case followed much the same trajectory as Tillery's case, although the Circuit Court was more terse in its explanation.[16] In Hamilton's case, Nagle & Zaller claimed $3,280 in attorneys' fees, but the court awarded only $1,345, saying:

> My ruling will be the same. I will award the total amount of principle [sic], the cost of collection, the interest owed, and total court costs, and the attorney fees reduced by the amount you claim to be due on appeal.... Calculated total attorneys' fees due are $1,345, which I find are reasonable.[17]

16. It is worth noting that both cases were heard in close proximity on the same day, by the same trial judge, after the court rejected a motion to consolidate the two cases and others. This may help explain the relative dearth of explanation accompanying Hamilton's case.

17. A statement of attorneys' fees introduced by the Association as an exhibit shows that $1,345 constitutes the amount Nagle & Zaller charged its client in connection with the filing of the statutory lien, and

The court declined to award the balance of the fees requested, which represented charges for the de novo appeal.[18] Again, the Circuit Court may have decided that the $1,345 was sufficient compensation for this suit involving only $808 in overdue assessments, given that the record reflects that Hamilton mounted no defense. We hold that the Circuit Court for Harford County properly emphasized the reasonableness of a fee award in making its decisions in both the Tillery and Hamilton cases, while correctly eschewing the lodestar method. The court acted within its discretion.

## CONCLUSION

We hold that the Circuit Courts in these cases acted within their discretion in making the fee awards that they did, and correctly rejected the approach adopted by the District Court of awarding attorneys' fees based merely on a percentage of principal sought. We also hold it improper to use the lodestar method in calculating attorneys' fees in contractual debt-collecting cases, and instead affirm the use of MRPC 1.5 as a rubric for determining a reasonable fee. We affirm the judgments of the Circuit Courts for Harford County and Prince George's County.

**JUDGMENTS OF THE CIRCUIT COURTS FOR HARFORD COUNTY AND PRINCE GEORGE'S COUNTY AF-**

the suit in District Court. A court may consider, in making its award, work done in connection with obtaining a statutory lien pursuant to the Maryland Contract Lien Act, Md.Code (1974, 2003 Repl. Vol.), Sections 14–201 to 206 of the Real Property Article.

**18.** The statement of fees submitted as an exhibit in the Tillery case appears primarily based on hourly rates, and this may be because some of the fees for the work in this case were included in a Stipulation Agreement between the Constant Friendship Homeowners Association and Tillery, which was entered into in the District Court. As Tillery defaulted under the Agreement, additional fees were incurred after the Stipulation, but were less than those claimed in Hamilton, where there was no Stipulation Agreement.

FIRMED. COSTS IN THIS COURT TO BE PAID BY THE PETITIONERS.

BATTAGLIA, J., joins in judgments only.