J-A23004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| OWEN FRANCIS, | : | |
| | : | |
| Appellant | : | No. 501 WDA 2014 |

Appeal from the Judgment of Sentence entered on February 10, 2014
in the Court of Common Pleas of Allegheny County,
Criminal Division, No. CP-02-CR-0013746-2013

BEFORE: GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 22, 2015**

Owen Francis ("Francis") appeals from the judgment of sentence imposed following his conviction of two counts each of recklessly endangering another person ("REAP") and simple assault, and one count each of aggravated assault, terroristic threats, and a carrying a firearm without a license.[1] We vacate Francis's judgment of sentence for aggravated assault and carrying a firearm without a license, affirm Francis's convictions of simple assault and terroristic threats, and remand for resentencing.

Francis and the victim, Chanel Palmer ("Palmer"), began dating in April 2012. On December 15, 2012, while watching television with Francis, Palmer received a text message. Francis and Palmer argued about the text message. During the argument, Palmer held her one-year-old daughter in

---

[1] **See** 18 Pa.C.S.A. §§ 2705, 2701, 2702, 2706, 6106.

her arms, and Palmer's two-year-old daughter sat on the couch. Francis told Palmer he was going to leave, after which he gathered his belongings. The two continued to argue, at which time Francis head-butted Palmer on the forehead and struck Palmer with his closed fist. At the time, Palmer still held her daughter. After being struck, Palmer put her daughter down.

Francis went to the second floor, as the two continued to argue. Upon returning to the first floor, Francis grabbed Palmer by the neck, holding her against the wall. Francis threw Palmer to the ground, still choking her. As Francis continued to strike Palmer, he pulled out a gun and held it to Palmer's head. Francis told Palmer that if she continued to scream, he would pull the trigger. Palmer stopped screaming, and Francis released her. However, Francis continued striking Palmer with a closed fist. Palmer gathered her children and proceeded to the first floor exit door. Francis grabbed Palmer's phone and smashed it on the floor. Then, as he left the residence, Francis threatened to kill Palmer and her grandmother if he saw them again.

Officer Elvis Duratovic ("Officer Duratovic") responded to the scene, at which time he found Palmer, crying hysterically. Officer Duratovic observed that Palmer had severe injuries to her head and face, and that her mouth was bleeding. Based upon Palmer's difficulty speaking and her injuries, Officer Duratovic believed that "there was a pistol whipping[.]" N.T.,

2/10/14, at 7.   During his investigation, Officer Duratovic discovered that Francis did not have a license to carry a firearm.

After a non-jury trial, the trial court found Francis guilty of the above-described charges.  For his conviction of carrying a firearm without a license, the trial court sentenced Francis to two to four years in prison, followed by a five-year term of probation.  For his conviction of aggravated assault, the trial court imposed a concurrent prison term of two to four years, followed by five years of probation.[2]  Francis timely filed a post-sentence Motion, which the trial court denied.  Thereafter, Francis filed the instant timely appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Francis presents the following claim for our review:  "Was the evidence sufficient to support the conclusion[,] beyond a reasonable doubt[,] that [he] committed the offenses of aggravated assault and carrying a firearm without a license?"  Brief for Appellant at 6.

Francis claims that the Commonwealth failed to establish that he, in fact, possessed a deadly weapon, and that he used that weapon to assault Palmer.  *Id.* at 15.  Francis contends that Palmer "was not familiar with guns at all," and described it only as being black and silver.  *Id.*  According to Francis, the Commonwealth's evidence is "wholly insufficient to allow a conclusion that the object in question 'looks like, feels like, sounds like, or is

_____

[2] The trial court imposed no further sentence as to Francis's convictions for REAP, simple assault and terroristic threats.

- 3 -

like, a firearm.'" **Id.** at 16 (quoting **Commonwealth v. Layton**, 307 A.2d 843, 844 (Pa. 1973)). Francis argues that "[n]o evidence of any kind exists on the record to establish that [he] had or used any pistol that could be made to shoot a bullet." Brief for Appellant at 16.

In reviewing a challenge to the sufficiency of the evidence, we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." **Commonwealth v. Bibbs**, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

**Id.** (citation and quotation marks omitted). It is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. **Commonwealth v. Randall**, 758 A.2d 669, 674 (Pa. Super. 2000).

Francis first challenges the sufficiency of the evidence underlying his conviction of aggravated assault, 18 Pa.C.S.A. § 2702(a)(4). A person is guilty of aggravated assault under that subsection if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" **Id.** The Crimes Code defines a "deadly weapon," as

- 4 -

[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

*Id.* § 2301. Section 2301 provides no definition for the term "firearm."

The term "firearm" is defined in thirteen separate sections of the Crimes Code. Crimes Code section 908(c) (prohibited offensive weapons), defines a firearm as "[a]ny weapon which is designed to or may readily be converted to expel any projective by the action of an explosive or the frame or receiver of any such weapon." *Id.* § 908(c). Substantially similar definitions are used in Crimes Code sections 913 (possession of firearm or other dangerous weapon in court facility), 2702.1 (assault of law enforcement officer), 2707.1(d) (discharge of a firearm into an occupied structure), 3901 (theft and related offenses), 5515(a) (prohibiting of paramilitary training), 6105(i) (persons not to possess, use, manufacture, control, sell or transfer firearms), 6106(e)(1) (firearms not to be carried without a license), 6107(c) (prohibited conduct during emergency), 6111.2 (firearm sales surcharge),[3] and 6111.4 (registration of firearms). Thus, twelve of the thirteen statutory definitions of firearm, set forth in the Crimes Code, include the requirement that the weapon must be designed or readily

---

[3] *See also* 18 Pa.C.S.A. § 6111.1 (adopting the definition set forth in section 6111.2).

be converted to expel a projectile by means of an explosive.[4] ***See id.*** Therefore, consistent with the definitions of "firearm" adopted by our legislature, we conclude that for purposes of a conviction of aggravated assault under 18 Pa.C.S.A. § 2301, the Commonwealth must establish, at a minimum, that the weapon must be designed to, or readily may be converted to expel a projectile by means of an explosive or the expansion or escape of gas.

Our review of the record discloses no evidence upon which a jury could find that the weapon in Francis's possession was designed to, or readily could be converted to expel a projectile by means of an explosive or the expansion or escape of gas. The victim, Palmer, provided the only description of the weapon:

> Q.   [The Commonwealth]:  … Were you able to see this gun?
>
> A.   [Palmer]:  It was black and silver.
>
> Q.   It was black and silver.  Okay.  And are you familiar with guns at all?
>
> A.   No.
>
> Q.   Okay.  And had you ever seen this gun before?
>
> A.   I seen [*sic*] it once before.
>
> Q.   … Do you recall when that was?

---

[4] We note that Crimes Code section 5122 (weapons or implements of escape) defines a firearm as including "an unloaded firearm and the unassembled components of a firearm." 18 Pa.C.S.A. § 5122(b)(2).

A.      Maybe a couple weeks prior to the incident.

Q.      … And was it the same color and everything that you had seen before?

A.      Yes.

Q.      … Is this something that you knew to be in your home?

A.      No.

Q.      … So, when he held the gun to your head, what did he do?

A.      He said if I didn't stop screaming, he will pull the trigger.

…

Q.      What part of your head was the gun pointing towards?

A.      Along my temple.

N.T., 2/10/14, at 16-17.  On cross-examination, Palmer testified as follows:

Q.      [Defense counsel]:   … You indicated … in answer to the Assistant District Attorney that you had seen this alleged gun before?

A.      [Palmer]:  Yes.

Q.      And where had you seen it before?

A.      In a car.

Q.      In a vehicle?

A.      In a car.  In the Land Rover.  I've been in the Land Rover before.

Q.      Now, on this particular occasion, though, you're not saying that he left the residence and went out to the street where the car was.  Right?

A.      I'm sorry.  No, he did not.

Q.    He went up to your bedroom area?

A.    Correct.

Q.    … And you never saw him carry the gun?

A.    No.

Q.    Did he have a holster for it?

A.    No.

*Id.* at 38-39.  The Commonwealth presented no other evidence describing the weapon.

The evidence, even when viewed in a light most favorable to the Commonwealth, fails to establish that the object used to threaten Palmer was designed to, or readily could be converted to expel a projectile.  Further, there is no evidence, direct or circumstantial, upon which such inference could be made.  "[R]easonable inferences are predicated on proven facts and circumstances, not on suspicion or surmise."  ***Commonwealth v. Jackson***, 955 A.2d 441, 444 (Pa. Super. 2008).  Because the Commonwealth failed to establish that Francis committed aggravated assault, as defined by 18 Pa.C.S.A. § 2702(a)(4), we vacate his judgment of sentence as to that charge.

Francis also challenges the sufficiency of the evidence underlying his conviction of carrying a firearm without a license, a violation of Crimes Code section 6106(a).  Brief for Appellant at 17.  Francis again argues that the

Commonwealth failed to establish that he possessed a firearm, as defined by that statute. *Id.*

Section 6106 of the Crimes Code provides, in relevant part, that

any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this Chapter commits a felony of the Third Degree.

18 Pa.C.S.A. § 6106(a). The Uniform Firearms Act,[5] of which section 6106(a) is a part, offers the following definition of "firearm":

Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

As the trial court stated in its Opinion,

In Dictionary.com, pistol is defined as "a short firearm intended to be held and fired with one hand, a short and barreled handgun. The Free Dictionary.com defines revolver as "a handgun having a revolving cylinder with several cartridge chambers that may be fired in succession." Another definition is a "multi-chambered cylinder that allows several shots to be discharged without reloading." When terms such as fired and discharged are used, the clear intent is the device must expel a projectile by some mechanism. In [***Commonwealth v.*** ] ***Gaine***[*r*, 7 A.3d 291 (Pa. Super. 2010)], the [Superior] Court stated[,] "The issue is whether the gun was capable of being converted into an object that could fire a shot." [***Gainer***, 7 A.3d

---

[5] 18 Pa.C.S.A. §§ 6101-6127.

at] 298-299. Simply stated, the gun must be a real gun capable of firing a shot.

Trial Court Opinion, 12/22/14, at 26. We agree.

As reflected by this Court's analysis in *Gainer*, the Commonwealth must establish, at a minimum, not only the barrel length, as expressly required by statute, but that the firearm is capable of being converted into an object that could fire a shot. Our review of the record confirms the trial court's conclusion that the Commonwealth presented no evidence regarding barrel length, or that the weapon was capable of being converted into something that could fire a shot. *See* 18 Pa.C.S.A. § 6102; *Gainer*, 7 A.3d at 298-99. We therefore agree with the conclusion reached by the trial court, as stated in its Opinion, that the evidence is insufficient to sustain Francis's conviction of possessing a firearm without a license. *See* Trial Court Opinion, 12/22/14, at 26.

Francis does not challenge his remaining convictions on appeal. Although the trial court imposed no further sentence as to these convictions, our resolution of Francis's appeal disrupts the trial court's sentencing scheme. *See Commonwealth v. Wilson*, 67 A.3d 736, 745 n.11 (Pa. 2013) (deeming it necessary to remand for resentencing when the Court's resolution of the appellant's claims affects the sentencing scheme imposed by the trial court). We therefore reverse Francis's judgment of sentence as to REAP, simple assault and terroristic threats, and remand for resentencing.

Judgment of sentence vacated in part, reversed in part, and remanded for resentencing, consistent with this Memorandum. Superior Court jurisdiction relinquished.

Lazarus, J., joins the memorandum.

Gantman, P.J., concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2015